UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-20486-CV-UNGARO

DOLORES THOMPSON o/b/o
YORDANO PEREZ,
    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.
_____/

**ORDER AFFIRMING THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment (D.E. 20) and Defendant's Motion for Summary Judgment (D.E. 18).

THE MATTERS were referred to the Honorable William Dubé, United States Magistrate Judge. On February 11, 2009, Judge Dubé issued a Report and Recommendation recommending that Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED (D.E. 26). Plaintiff has filed objections to Judge Dubé's Report and Recommendation (D.E. 27).

THIS COURT has made a *de novo* review of the entire file and record herein, and is otherwise fully advised in the premises.

**Background**

In September 2002, Dolores Thompson ("Thompson") filed an application for child's supplemental security income benefits on behalf of her son, Yordano Perez ("Plaintiff"), based upon impairments of attention deficient disorder ("ADHD") and anxiety. The application indicated that the child was born on December 23, 1993, and that his disability began on August

1

26, 2002.

Defendant denied Plaintiff's application for benefits. Upon Plaintiff's request for reconsideration, an administrative law judge held hearing on May 18, 2005, at which Thompson testified. On September 25, 2005, the administrative law judge issued a decision finding that Thompson's testimony was not credible and that her son was not disabled within the meaning of the Social Security Act even though he had the severe impairments of ADHD and learning disability. (R. at 13-19.) The Appeals Council affirmed that decision, but the United States District Court for the Southern District of Florida reversed and remanded the claim. The Appeals Council then issued an order remanding the case to an administrative law judge and ordered the administrative law judge to (1) conduct a complete assessment of Plaintiff's impairments by giving full consideration to each of the six functional domains outlined in the regulations, (2) further address the opinions of Drs. Hernandez and Espaillat, (3) further develop the evidence regarding the Plaintiff's functioning when he complies with his medications and his functioning when he does not comply, and (4) offer the Plaintiff an opportunity for a hearing. (R. at 280-81.)

A second administrative law judge (the "ALJ") held a hearing on January 9, 2008, and issued a second decision on February 28, 2008 denying Plaintiff's claim. (R. at 244-70.) The ALJ found that Plaintiff suffered from the severe impairments of ADHD, history of oppositional defiant disorder, and asthma; however, the ALJ found that these impairments did not meet or equal one of the listed impairments in the federal regulations. Specifically, the ALJ noted that Plaintiff's asthma has not required repeated hospitalizations or medical care set forth in the regulations. Also, with regards to Plaintiff's ADHD impairment, the ALJ noted that Plaintiff failed to prove that his symptoms were disabling to the extent alleged because Plaintiff failed to

comply his prescribed medical treatment. In fact, the ALJ found that the most pervasive issue in the case was that Plaintiff has not complied with his prescribed medical treatment, namely that he has been inconsistent in taking his prescription medicines. The ALJ also considered whether Plaintiff's impairments cause marked and severe functional limitations in all six of the functional domains outlined in the regulations but found none. The ALJ considered the opinions of Drs. Hernandez and Espaillat but discredited them. In sum, the ALJ concluded that the Plaintiff was not disabled.

Plaintiff then filed a complaint with this Court, seeking a reversal of the ALJ's decision. Plaintiff's Motion for Summary Judgment asserts that the ALJ committed the following five errors: (1) the ALJ improperly developed the record pertaining to Plaintiff's ability to function when compliant and not compliant with prescribed medication; (2) the ALJ improperly rejected four separate and independent assessments of Plaintiff's functional ability from the examining and treating physicians; (3) the ALJ's functional abilities findings are not properly supported; (4) the ALJ failed to consider Plaintiff's newly diagnosed disorders; and (5) the ALJ failed to provide an proper opportunity for a hearing on the issues identified by the Appeals Council. Judge Dubé rejected all five arguments in his Report and Recommendation, and, as discussed more fully below, Plaintiff objects to Judge Dubé's findings on his first, second, fourth and fifth arguments.[1]

## Legal Analysis

Judicial review of factual findings in disability cases is limited to determining whether

---

[1] Plaintiff does not object to Judge Dubé's analysis on whether the ALJ's functional abilities were properly supported.

the ALJ's findings were based upon substantial evidence and whether the correct legal standards were applied. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Graham,* 129 F.3d at 1422. If supported by substantial evidence, then the ALJ's findings are conclusive. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); 42 U.S.C. § 405(g). Even if the Court finds that the "evidence preponderates against the [ALJ's] decision, [the court] must affirm if the decision is supported by substantial evidence." *Barnes*, 932 F.2d at 1358. This restrictive standard of review applies only to factual conclusions; ALJ's conclusions of law do not receive a similar presumption of validity. *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991).

      Plaintiff contends the ALJ's decision was erroneous and that Judge Dubé's Report and Recommendation should be rejected for the following four reasons:  First, Judge Dubé erroneously concluded that the ALJ properly developed the record pertaining to Plaintiff's ability to function when compliant with prescribed medications versus when noncompliant.  Second, Judge Dubé erroneously concluded that the ALJ properly rejected the assessments of all four of Plaintiff's treating and examining physicians, as well as Plaintiff's teacher.  Third, Judge Dubé erroneously concluded that the ALJ properly considered Plaintiff's newly diagnosed bipolar disorder, reading disorder, and written language expression disorder.  And fourth, Judge Dubé erroneously concluded that the ALJ provided a full and fair hearing on remand.  (*See* Objections to Magistrate Judge's Report and Recommendation ("Objections") at 1-2.)  The undersigned will consider each of the Plaintiff's four arguments in turn.

A.  **The ALJ properly developed the record regarding Plaintiff's functioning while compliant and non-compliant with his prescription drug treatment.**

Plaintiff argues, as he did to Judge Dubé, that the ALJ failed to properly develop the record as to his ability to function when compliant and not complaint with his prescribed medical treatment. Specifically, the ALJ should have contacted his treating and examining doctors, Drs, Hernandez and Espaillat, to clarify this issue. Plaintiff argues that rather than contacting his two treating physicians, the ALJ chose to order separate examinations by Dr. Piniella (a psychiatrist) and Dr. Artiles (a psychologist). Plaintiff argues that when Drs. Piniella and Artiles failed to make specific findings regarding Plaintiff's functionality when compliant with his prescribed treatment, the ALJ then chose to have another psychologist, Dr. Mills, testify as to Plaintiff's functionality even though Dr. Mills never examined the Plaintiff.

An administrative law judge has an affirmative duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). This obligation, however, does not relieve the claimant of the burden of proving his is disabled. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "In general, an administrative law judge should re-contact a medical source when the evidence from that source is inadequate to determine whether the claimant is disabled." *Vesy v. Astrue*, 353 Fed. Appx. 219, 224 (11th Cir. Nov. 17, 2009) (unpublished decision) (citing 20 C.F.R. § 416.912(e)).

Here, the ALJ was not required to re-contact Drs. Hernandez and Espaillat to clarify the issue of Plaintiff's functionality. The federal regulations do not create a *per se* obligation to re-contact treating physicians; rather, contact need only be reestablished if the evidence from that source is inadequate. *See* 20 C.F.R. § 416.912(e); *Couch v. Astrue*, 267 Fed. Appx. 853, 855

(11th Cir. 2008) (unpublished decision) (stating that the ALJ was not under a duty to re-contact the claimants treating physicians where the ALJ was in possession of all the treating physician medical records and the information contained therein was adequate to enable the ALJ to determine that the claimant was not disabled).  The ALJ thoroughly considered the opinions of Drs. Hernandez and Espaillat, and Plaintiff does not argue that the ALJ did not have all of Drs. Hernandez's and Espaillat's records.  Indeed, Plaintiff does not argue that Drs. Hernandez's and Espaillat's records were inadequate to address the issue of Plaintiff's functionality.

In any event, re-contacting Drs. Hernandez and Espaillat would not likely have further developed the record regarding the issue of Plaintiff's functionality because the ALJ specifically found that, by comparing the doctors' notes with Plaintiff's pharmacy records, the doctors did not have accurate information regarding Plaintiff's compliance with his prescription medicine.  (*See* R. at 252, 256.)   After reviewing the records, the ALJ concluded that Thompson and other family members misrepresented Plaintiff's compliance to the doctors, and the doctors' notes strongly indicate that their findings were dependent upon such misrepresentations.  For example, the ALJ noted that Dr. Hernandez mistakenly believed at her January 28, 2003 examination of Plaintiff that he was taking Adderall and Risperdal, when in fact the pharmacy records indicate that Plaintiff had not taken medication since at least early December 2002.  (R. at 252.)

Rather than relying on doctors who had been provided with misinformation, the ALJ properly developed the record by comparing Plaintiff's pharmacy records, which detailed his prescription usage, to his medical and school records, which detailed his behavior and ability to function.  For example, the ALJ noted that Plaintiff's ability to follow directions and his Global Assessment of Function ("GAF") score improved in September and November of 2002, likely

because he had taken prescriptions for two months according to the pharmacy printout. (R. at 251.) Additionally, the ALJ pointed out that Dr. Arias's treatment notes from November 2002 reflected a child whose functioning responded to medication because it appeared that the Plaintiff was at least taking his Adderall medication at this time, and Dr. Arias remarked that Plaintiff was generally cooperative and motivated, had substantive and grammatical speech and language skills, without any evidence of expressive or of receptive difficulties. (R. at 252.) Conversely, treatment notes from May 2006 show that Plaintiff performed poorly during a psychiatric interview, and the records pharmacy records indicated that Plaintiff had not taken any psychotropic medication for over a year – even though Thompson informed the treatment team that Plaintiff had been taking Adderall. (*See* R. at 258.)

In sum, the Court affirms Judge Dubé's conclusion that the ALJ properly developed the record, as required by the remand order, on the issue of Plaintiff's failure to comply with prescribed medication and the ALJ's determination on that issue is supported by substantial evidence.

**B.     The ALJ properly rejected the assessments of Plaintiff's examining physicians.**

Plaintiff argues that the ALJ improperly rejected the opinions of all of treating and examining medical source opinions in this case, as well as the corroborating functional findings from Plaintiff's exceptional student education ("ESE") teacher. Plaintiff argues that the ALJ instead erroneously substituted her own opinion for that of the experts. These arguments were made to Judge Dubé but rejected in his Report and Recommendation.

It is well-established that the opinion of, diagnosis, and medical evidence of a plaintiff's treating physician should be accorded substantial weight unless good cause is shown for not

doing so. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). "Good cause" exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). A contrary opinion by a non-examining physician does not create good cause. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1998). Additionally, "[t]he reports of reviewing non-examining physicians do not constitute substantial evidence on which to base an administrative decision." *Id.*

In this case, the ALJ thoroughly evaluated the opinions of Plaintiff's treating and examining physicians, but found them largely unreliable because they relied upon misstatements regarding Plaintiff's compliance with his prescribed treatments. The ALJ evaluated the experts' findings in light of Plaintiff's contemporaneous school and pharmacy records to conclude that the experts' findings were incomplete because they did not fully account for Plaintiff's noncompliance. Instead, the ALJ found that there was substantial evidence demonstrating that Plaintiff's noncompliance contributed to his poor functionality assessments. For example, Dr. Hernandez noted in June 2003 that Plaintiff had marked limitations, but also that Plaintiff had not been "on medication for a period of time." (R. at 183.) Further, while Dr. Espaillate imposed marked limitations in several domains of functioning in May 2005, there was no evidence that this statement was actually based on his examination of Plaintiff. (*See* R. 211-213.) Rather, the record only reflected one visit prior to that assessment in June 2003. (*See* R. at 256-257.)

The Court rejects Plaintiff's argument that the ALJ's findings are inappropriate simply

because she evaluated the credibility of the experts' findings and found them unreliable. The ALJ articulated good cause reasons for discrediting these medical opinions, which are supported by substantial evidence. Further, the Court notes that Plaintiff's assertion that the ALJ cannot reject a treating/examining source opinion unless and until the ALJ has secured a countervailing opinion of another treating/examining source is not supported by her authorities. Plaintiff cites to district court decisions that simply stand for the proposition that non-examining source opinions are entitled to little weight in the face of contrary examining source opinions. *Ortega v. Chater,* 933 F.Supp. 1071, 1074 (S.D. Fla. 1996); *Kent v. Sullivan*, 788 F.Supp. 541, 544 (N.D. Ala. 1992). These authorities, however, do not support Plaintiff's argument that a countervailing opinion from an examining source is *required*.

In sum, the Court affirms Judge Dubé's conclusion that the ALJ complied with the requirements as set out by the regulations regarding considering, discussing, and weighing the opinions of examining and consultative physicians.

**C.     The ALJ did not err by failing to consider Plaintiff's newly diagnosed disorders.**

Plaintiff argues (without any record cites or authority) that the ALJ failed to consider Plaintiff's newly diagnosed bipolar disorder, reading disorder, and disorder of written expression. These diagnoses came from Dr. Laura Artiles's September 2007 examination. The ALJ thoroughly considered Dr. Artiles's evaluation, however, but ultimately concluded that it was not credible because it was based at least in part on misinformation – that is, that Plaintiff had been taking prescription medication at the time of the examination. Meanwhile, pharmacy records showed that Plaintiff had been noncompliant with his prescription medication for 2¼

years prior to seeing Dr. Artiles.[2]  It is clear that Dr. Artiles's evaluation was based at least in part on the faulty premise that Plaintiff was compliant, and, therefore, the ALJ did not err in concluding that the evaluation was to be afforded little weight.  For the foregoing reasons, the Court affirms Judge Dubé's conclusion that the ALJ properly rejected the test performance and results submitted by Dr. Artiles.

**D.     The ALJ did not err in failing to provide proper opportunity for Plaintiff and his mother, Thompson, to testify.**

Plaintiff's final argument is that the ALJ failed to provide a full and fair hearing.  Specifically, the ALJ erred by not allowing Thompson to testify.[3]  Plaintiff argues that Thompson's testimony would have highlighted "Dr. Mill's limited understanding of the relevant facts", and the ALJ's decision to exclude Thompson's testimony amounts to a failure to properly investigate exculpatory reasons for Plaintiff's noncompliance (such as Thompson's inability to pay for the medications).

The Court rejects this argument for several reasons.  First, the Court notes that the ALJ had the benefit of Thompson's testimony at the first hearing on her son's case, as well as

---

[2]     Plaintiff now argues that his noncompliance is irrelevant to his newly diagnosed new disorders, but this is speculation because Plaintiff offers no authority suggesting that his medical treatment would not have alleviated the symptoms of these new disorders.

[3]     The Court notes that Plaintiff also argues that the ALJ refused to allow Dr. Mills to "identify any testimony from Yordano or his mother from which he might benefit, and specifically indicated, over objection of counsel, that no such testimony would be allowed." (Objections at 12.)  The Court has reviewed the portion of the record cited in support of this proposition, but finds that it does not in fact support Plaintiff's argument.  Plaintiff simply cites to the transcript from the January 9, 208 hearing where Dr. Mills is asked whether he "would benefit from listening to the testimony of [Thompson,]" and the ALJ interjects to state that such testimony will not be permitted.  (R. at 448-49.)  For the reasons described above, the ALJ's decision to not allow Thompson to testify at the hearing does not amount to a denial of a full and fair hearing.

Thompson's 2007 affidavit.[4]  (*See* R. at 374.)  Second, while the remand order instructed the ALJ to offer Plaintiff an opportunity for a hearing, it did not instruct the ALJ to permit Thompson or the Plaintiff to testify.  Instead, the remand order instructed the ALJ to explore only a limited set of issues, and the ALJ limited the hearing to evidence only on those issues.  For example, one issue was Plaintiff's noncompliance with his prescription medication, and the ALJ carefully considered the pharmacy records that Plaintiff's counsel submitted.  Plaintiff now argues that the ALJ's investigation was somehow incomplete because there could have been additional pharmacy records indicating that Plaintiff complied with his treatment.  (Objections at 13.)  However, if that were the case, then Plaintiff's counsel should have produced additional pharmacy records and medical records at the hearing.  The record indicates that the ALJ properly considered all the evidence Plaintiff put before her.  Finally, the ALJ found that Thompson deliberately and wilfully made false and misleading statements regarding her son's compliance with his treatment.  (R. at 248.)  The weight, therefore, that the ALJ would have accorded to any testimony from Thompson would likely have been slight.  In sum, Plaintiff has failed to show that he was denied a full and fair hearing because Thompson did not testify.

## Conclusion

For the foregoing reasons, it is hereby

---

[4]  The ALJ thoroughly considered this affidavit but found it unhelpful.  (R. at 259.)  Thompson states in her affidavit that "it has been very difficult to take my son to the psychiatrist" because her daughter required extensive after she was hit by a car in October 2006.  This, however, does not explain why Plaintiff was not compliant with his medical treatment for entire adjudicated period.  Further, as the ALJ pointed out, Thompson made additional statements in her affidavit that were unsupported by the record.  For example, Thompson stated that she frequently takes Plaintiff to see doctors as Doral Pediatric, and they have prescribed Plaintiff medication.  Yet, there are no treatment notes from Doral Pediatric, and pharmacy records did not support this statement as they reflect only prescriptions from Drs. Hernandez and Espaillat.

ORDERED AND ADJUDGED that the Magistrate Judge's Report is RATIFIED, ADOPTED, and AFFIRMED.  It is further

ORDERED AND ADJUDGE that Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this _29th_ day of April, 2010.

*Ursula Ungaro*

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record